E-FILED
Thursday, 28 March, 2019 12:22:15 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ANN MARIE H.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:17-cv-04252-JEH |

## Order and Opinion

Now before the Court is the Plaintiff Ann Marie H.'s Motion for Summary Judgment (Doc. 12) and the Commissioner's Motion for Summary Affirmance (Doc. 17).[1] For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

### I

Ann Marie H. filed her application for supplemental security income (SSI) on June 17, 2013 and alleged disability beginning on April 30, 2013. Her claim was denied on September 27, 2013 and was denied upon reconsideration on May 30, 2014. Ann Marie filed a request for hearing concerning her application for SSI on August 1, 2014. A hearing was held before the Honorable John M. Wood (ALJ) on September 9, 2015. At that hearing, Ann Marie was unrepresented and a

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 9, 10).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 6) on the docket.

1

Vocational Expert (VE) testified. Following the hearing, Ann Marie's claim was denied on July 7, 2016. Her request for review by the Appeals Council was denied on July 12, 2017, making the ALJ's Decision the final decision of the Commissioner. Ann Marie timely filed the instant civil action seeking review of the ALJ's Decision on August 31, 2017.

## II

At the hearing, the ALJ initially discussed Ann Marie's rights to "make sure [she understood her] rights." AR 32. He continued, "We do this when everybody – we send everybody an explanation of their rights in the mail and then when they come in for the hearing, we go over to make they [sic] understand." Id. The ALJ then explained to Ann Marie that she had a right to look for an attorney who knew about Social Security law and could represent her, that she could look for another attorney though she had a previous one who withdrew, and that she could be given time to look for another attorney to represent her. He mentioned Ann Marie "[knew] something about this because [she] had an attorney before[.]" Id. The ALJ listed what Ann Marie's rights entailed with regard to representation, and that a representative would be able to ask questions of her, look at the electronic record to ensure the SSA had complied so that it was accurate and complete, and would be able to ask questions of the VE. The ALJ stated an attorney could not charge Ann Marie a fee unless he or she helped her win her case. "If they're able to do that, then they'd be entitled to a certain percentage of your past due benefits which would have to be approved by Social Security." AR 33. The ALJ reminded Ann Marie that there were some legal aid organizations that may be able to represent her for free if she financially qualified. He mentioned there were other ways to look for attorneys including by word of mouth, television, internet, and phone book. In response to the ALJ's question whether Ann Marie understood what he told her, Ann Marie responded she did and then mentioned she tried to find

2

another attorney after her previous attorney "dropped [her]" and that no one would take her case. Id. The ALJ reiterated that it was up to Ann Marie as to what she wanted to do about representation. He noted she could have an additional 30 days to look for new representation or she could represent herself that day. Ann Marie responded, "I'll just try to represent myself." AR 34. The ALJ clarified, "Okay. So you want to represent yourself then?" Id. Ann Marie responded, "yes." Id.

The ALJ proceeded to explain what he would do next – read a statement of the issues to Ann Marie – and he explained the purpose of the hearing was to allow Ann Marie to present her case to someone who had no involvement in it until her request for hearing was filed. The ALJ then explained his job was to review the written evidence and testimony taken that day and to make his own decision about whether Ann Marie was under a disability as that term was defined under the law and regulations. He continued to explain the process. AR 35. The ALJ next addressed the record's contents and that the VE would testify in addition to Ann Marie:

> What we're going to do is I'm going to ask you some questions and then when I'm done asking you questions, you'll be able to say what you want to say, in case there's something that you want to say that hasn't been brought out already. And then we'll talk to the job expert. So let me start asking you some questions.

AR 36-37. The ALJ proceeded to ask Ann Marie a variety of questions about her background, her living circumstances, her daily activities, and her past work.

As for her daily activities, Ann Marie testified that she had not cooked a "home-cooked" meal for at least a year and a half. AR 44. She confirmed she cooked "light stuff" as she currently could not bend to put things in the oven and could not chop things because her hand shook too badly. AR 45. After the ALJ asked her questions, the ALJ asked Ann Marie if there was anything she wanted

3

to say that had not already come out while he asked her questions. She first repeated that she had a new medication list. The ALJ again asked her if there was anything else and they engaged in a conversation about Ann Marie's anxiety, medications, and her back.

The ALJ proceeded to question the VE. After the ALJ presented the VE with the first hypothetical which included "occasional" overhead reaching and other manipulative functions performed "frequently," the VE responded Ann Marie's past work would be eliminated. The ALJ added vocational factors to the hypothetical and the VE identified jobs such a hypothetical individual could perform. Next, the ALJ asked the VE about the number of absences per month that an employer would tolerate in those jobs. The ALJ then explained that the VE was not giving a personal opinion about whether he thought Ann Marie could work but was instead answering:

> what we call hypothetical questions, which is like if somebody can do this and they can't do that, is there some job that maybe that they're capable of doing. So with that in mind, is there anything you'd like to ask him?

AR 51. Ann Marie responded, "On some of those jobs though, you have to have steady hands or hands that won't go to sleep." AR 51. The VE confirmed that all the identified jobs would be for hands that did not go to sleep. Ann Marie pursued it further:

| | |
|---|---|
| CLMT: | I have hands that go to sleep and – |
| VE: | Okay. |
| CLMT: | - get nerve – I have neuralgia and just sitting here right now, my leg is going numb and my hands are all tingling and swollen. |
| VE: | I see. |
| ALJ: | Okay. So yeah, these jobs would require you to be able to use your hands a big part of the day. |
| VE: | Yes. |

| | |
|---|---|
| ALJ: | Anything else you want to ask him? |
| CLMT: | That would be – how would you find them – find a job like that? |

*  *  *

| | |
|---|---|
| CLMT: | Right. But how I would have [sic] to hold them and have my hands not go numb. |
| ALJ: | Yeah, you already asked about that. |
| CLMT: | yeah, that's the reason why I – |
| ALJ: | He said all the jobs you'd need to be able to use your hands. |
| CLMT: | Yeah, because that would be the only thing because they told me I can't even feel to hold a pen at times because it hurts too bad. My husband has to help me and I can't hold the knife. That's the reason why I don't do – preparing food very much in that. Somebody opens the can for me. I pour it in. I stand there and stir it. Or I take the lunchmeat out of package [sic]. That's about the extent of me doing stuff. That's because of my hands going numb from the neuralgia. |
| ALJ: | Okay. All right. We understand. You've said you have problems with your hands. I get it. Is there anything else you want to say then before we wrap up the hearing? |

AR 52-53. Ann Marie responded in the negative and then discussed a CD that was sent to her which the ALJ explained was all the exhibits pertaining to her SSI claim. Thereafter the hearing concluded.

### III

In his Decision at Step Two, the ALJ determined Ann Marie had the following severe impairments: coronary artery disease; obesity; affective disorder; and anxiety disorder. AR 14. At Step Three, the ALJ determined neither Ann Marie's impairments nor a combination of those impairments met or medically equaled the severity of one of the listed impairments. As for her activities of daily living, the ALJ noted Ann Marie's allegations that she had difficulties with her daily activities, but that she testified to, among other things, her ability to cook

5

simple meals, do light housework, drive a car, and go shopping. AR 15. The ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except that she should never climb ladders, ropes, or scaffolds, and can perform other postural activities occasionally. She should avoid environmental hazards such as unprotected heights and dangerous machinery, and avoid concentrated exposure to extreme temperatures. The claimant can reach overhead occasionally, and she can perform other manipulative functions frequently. She is limited to the performance of simple, repetitive tasks involving little or no change in work routine, no interaction with the general public, and occasional interaction with coworkers and supervisors.

AR 16. The ALJ included a summary of the statements Ann Marie made in her May 6, 2014 Function Report – Adult including that she was frequently short of breath, was often dizzy and weak, and she experienced panic attacks and never went anywhere without a friend or family member. AR 17. The ALJ next included that Ann Marie testified at the hearing that: she lived with her husband, four children, and her six-year-old granddaughter; drove a car approximately three times per month but had difficulty driving because of her vision problems; last worked part-time in food preparation; did not believe she could currently work because of her anxiety and panic attacks; did light household chores such as laundry, dishes, or sweeping; she helped care for her granddaughter; and her medications caused dizziness and sleepiness. The ALJ determined Ann Marie's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in his Decision. AR 17.

The ALJ then discussed the medical evidence of record pertaining to Ann Marie's heart issues and mental health issues. The ALJ also discussed the opinions provided by various sources as to Ann Marie's physical and mental conditions, including consultative internal medicine and psychological examination diagnoses. In giving "considerable weight" to State Agency doctors' opinions, the ALJ stated, "However, the undersigned has considered the claimant's hearing testimony, and the combination of the claimant's coronary artery disease and obesity in finding that she is limited to sedentary work." AR 19. An impartial medical expert's opinion which provided, among other things, that Ann Marie was limited to occasionally reaching overhead because of her surgical history was given "great weight." AR 20. The ALJ concluded:

> In sum, the above [RFC] assessment is supported by the claimant's statements regarding her activities and limitations, the unremarkable medical record, and the opinions of the medical experts and the State agency reviewing doctors. The claimant has impairments that cause functional limitations. However, the record indicates that the claimant's limitations would not prevent her from performing unskilled work under the restrictions contained in this assessment.

AR 21.

## IV

### A

Ann Marie makes the following arguments: she did not validly waive her right to representation; the ALJ erred in failing to assess Ann Marie's testimony about the use of her hands; the ALJ erred in discounting the opinion of an examining psychologist; and the ALJ erred in finding moderate mental limitations that he did not present to the VE.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v.*

7

*Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Ann Marie claims error on the ALJ's part at the hearing on September 9, 2015 and at Step Four of the five-step test.

**B**

The Court begins and ends its analysis with Ann Marie's argument that the ALJ erred in failing to assess her testimony about the use of her hands. Ann Marie specifically argues that the ALJ was required to consider the effects of the combination of all of her medically determinable impairments, was required to evaluate her symptoms in assessing her RFC, and was required to draw a logical connection between the evidence and his conclusions, but he did none of those

9

things.  The Commissioner counters that an RFC finding only considers those limitations that are reasonably caused by "medically determinable impairments." The Commissioner argues that Ann Marie has not pointed to medical evidence that would explain her symptoms of hand numbness, and thus they need not have been factored into the RFC finding.  Per the Commissioner, Ann Marie's testimony standing alone is not enough to establish a medically determinable hand impairment.

Nowhere in his Decision did the ALJ mention Ann Marie's testimony that she complained of numbness in her hands.  Nor did the ALJ mention in his Decision that she also complained of issues with hand numbness, swollen hands, and stiff hands in her May 6, 2014 Function Report – Adult to which the ALJ cited and summarized.  AR 220, 227, 228.  Such complete silence in this regard is harmful error in this case for several reasons.

First, just as Ann Marie makes much of in her Motion for Summary Judgment, she was unrepresented at the hearing.  An ALJ's duty to develop a full and fair record in a Social Security hearing is "enhanced when a claimant appears without counsel; then the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).  Rather than scrupulously and conscientiously probe into Ann Marie's allegations as to hand numbness, the ALJ stated after Ann Marie continued to mention her hands:

> Okay.  All right.  We understand.  You've said you have problems with your hands. I get it.  Is there anything else you want to say then before we wrap up the hearing?

AR 53.

Second, as is obvious from the above, Ann Marie did bring to the ALJ's attention that she experienced hand symptoms.  When she was questioned about

the housework she did, Ann Marie testified that she could no longer cook like she once did because her hand shook "too bad." AR 45. When the VE was questioned, Ann Marie interjected to ask: "On some of those jobs though, you have to have steady hands or hands that won't go to sleep." AR 51. The VE responded in the affirmative. Ann Marie continued, "I have hands that go to sleep and . . . get nerve – I'm having neuralgia and just sitting here right now, my leg is going numb and my hands are all tingling and swollen." AR 52. An ALJ's decision must be based upon consideration of all the relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("An ALJ is required to consider impairments *a claimant says he has*, or about which the ALJ receives evidence") (emphasis added).

Third, the ALJ's obligation to expressly consider as relevant Ann Marie's statements regarding hand numbness should have been apparent to him given that he ultimately included in his RFC finding that Ann Marie was capable of performing manipulative functions "frequently." AR 16. The ALJ's silence as to Ann Marie's testified-to hand symptoms is deafening in light of his ultimate RFC finding. The Commissioner argues that an RFC finding only considers those limitations that are reasonably caused by "medically determinable impairments." The Commissioner also accurately cites the relevant regulation and Social Security Ruling. *See*, *e.g.*, SSR 96-4p, at *1 ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment"). However, the ALJ made no such express determination that Ann Marie's hand numbness was not and could not itself be a medically determinable impairment. The Commissioner stresses that Ann Marie's testimony, standing alone, was not enough to establish a medically determinable hand impairment. Again, the ALJ did not say as much. The ALJ's Decision explained:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)- i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms.

AR 17 (relaying the substance of 20 C.F.R. 416.929); *see also* SSR 16-3p, at *3 (Providing that the SSA has a two-step process for evaluating an individual's symptoms, the first whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms). Given that first step in the two-step symptom evaluation process, the Court would expect the ALJ to make the observation that Ann Marie's hand numbness was neither a medically determinable impairment or that it was not a symptom of such an impairment outright in his written Decision. *See also Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (explaining at Step Two (severe impairment presence) of the five-step sequential evaluation, the question is whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement). The Commissioner's argument flirts with violating the *Chenery* doctrine. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (providing "*Chenery* doctrine forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"), *citing SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).

Finally, because of the ALJ's total silence with regard to Ann Marie's statements that she experienced hand numbness, the Court must *assume* the ALJ considered that evidence and must further *assume* he rejected it for proper reasons. Indeed, even if the Court can see that there was evidence in the record which would allow the ALJ to consider (and reject) Ann Marie's statements, the Court

must ultimately speculate that the ALJ actually did consider the relevant evidence and actually did reject it for sufficient reasons. That is not good enough. An ALJ must "sufficiently articulate his assessment of the evidence to assure [the court] that the ALJ considered the important evidence . . . and to enable [the court] to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). The Court is well aware that an ALJ need not discuss every piece of evidence in the record. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Nevertheless, because the ALJ entirely failed to discuss Ann Marie's allegations as to hand numbness, the Court is unsure as to whether the ALJ ignored an entire line of evidence contrary to his ruling. *Id*. This matter must be remanded.

**C**

While the Court finds that the ALJ's error was egregious enough to both preclude a finding that his Decision is supported by substantial evidence and to warrant remand, the Court does not contemplate that another full-blown round of proceedings is necessary in this case. Another hearing may not even be necessary, given that the ALJ's error in this case may be remedied simply by his explicit acknowledgment of and consideration of Ann Marie's September 9, 2015 hearing testimony regarding her hand symptoms.

**V**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 12) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc. 17) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to accurately recite the extent of the Plaintiff's hearing testimony and to expressly consider evidence of record that directly pertains to his ultimate RFC finding.

The Clerk of Court is directed to enter judgment as follows: IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social

Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four.

*It is so ordered.*

Entered on March 28, 2019.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE